**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| Amalgamated Transit Union and | ) | |
| Amalgamated Transit Union, Local 836, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 15-cv-855 |
| | ) | |
| v. | ) | |
| | ) | |
| Interurban Transit Partnership d/b/a The Rapid, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

1.     The Amalgamated Transit Union (ATU), an international union representing transit and allied workers, and ATU Local 836, a local union that serves as the exclusive representative of all non-supervisory employees of the Defendant Interurban Transit Partnership d/b/a The Rapid (ITP), bring this suit pursuant to 42 U.S.C. § 1983 to enforce their rights to freedom of speech and freedom of association under the First Amendment of the United States Constitution as those rights are incorporated by the Fourteenth Amendment. ATU and Local 836 allege that ITP is violating their First Amendment rights by threatening them with discipline and arrest if they distribute informational leaflets related to ongoing collective bargaining between Local 836 and ITP to members of the public in public spaces in and around the ITP Rapid Central Station. ATU and Local 836 seek preliminary and permanent injunctive relief against these practices.

2.     ITP has previously allowed Plaintiffs and other members of the public, including candidates for elected office, to distribute informational leaflets and to solicit members of the public in and around the Rapid Central Station. These areas are outdoor, publicly-owned streets and sidewalks, held open generally to the public. Accordingly, these areas constitute a traditional

public forum and ITP is violating Plaintiffs' First Amendment rights by imposing content-based restrictions that prohibit them from distributing leaflets related to collective bargaining with ITP. Moreover, even if they are not a traditional public forum, ITP has through its treatment of previous leafleting designated these areas as a public forum and its newly-announced policy of prohibiting Plaintiffs' leafleting activities is not narrowly tailored to a compelling government interest. Plaintiffs seek equal access to these areas for the purposes of speaking on matters of public concern.

**Parties**

3.      Local 836 is the sole and exclusive bargaining representative of all non-supervisory employees of the Interurban Transit Partnership.

4.      The ATU is the parent organization of Local 836. It is the largest labor union representing transit and allied workers in the U.S. and Canada.

5.      ITP is a public authority created pursuant to the Michigan Public Transportation Authority Act, Mich. Comp. Laws § 124.451 *et seq.*, that provides transportation services in the Grand Rapids metropolitan area. Pursuant to Mich. Comp. Laws. § 124.462, ITP is a public benefit agency and an instrumentality of the State of Michigan with all the powers of a public corporation.

**Jurisdiction and Venue**

6.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States, namely the First Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983.

7.      Venue is proper in the Western District of Michigan under 28 U.S.C. § 1391 because the Defendant is located in this district and all the events and omissions giving rise to the claims occurred in this district.

2

**Facts**

8.      Since December 2014, Local 836 and ITP have been engaged in bargaining over the terms of a collective bargaining agreement (CBA) to succeed the parties' CBA expiring on June 30, 2015.

9.      Local 836 and ITP have entered into an agreement to extend the terms and conditions of the CBA until August 29, 2015, but have not yet reached an agreement on the terms of a successor agreement.

10.      Concurrent with these negotiations, ATU and Local 836 have engaged in informational leafleting of the public in order to educate the public regarding their negotiations with ITP, a public entity.

11.      From August 4 through and including August 17, 2015, various ATU and Local 836 representatives, some of whom are ITP employees, distributed leaflets, including the one attached as Exhibit A hereto, to members of the public at various public locations, including at and around ITP's Rapid Central Station in Grand Rapids.

12.      ITP employees have only distributed leaflets while off duty in their capacity as citizens speaking about matters of public concern.

13.      Plaintiffs also distributed leaflets at and around ITP's Kentwood Station and at various other ITP bus stops in August 2015.

14.      Rapid Central Station consists of both an indoor building and an outdoor "bus bay."

15.      The bus bay consists of a sidewalk island platform covered by a canopy that is surrounded by a drive for buses, including both ITP buses and other bus lines, such as Greyhound.

16.     The drive surrounding the platform connects directly to Grand Rapids city streets, including Bartlett Street, Cherry Street, and Ellsworth Avenue.

17.     The sidewalk platform is accessible from the sidewalk running alongside Grand Rapids city streets via a painted crosswalk.

18.     Kentwood Station consists of a smaller bus bay that also connects directly to Kentwood city streets.

19.     At all relevant times, Plaintiffs' representatives were standing in outdoor spaces accessible and held open to the general public in and around the bus bays at Rapid Central Station, including on the sidewalk island platform, when they engaged in leafleting.

20.     At no time have Plaintiffs disrupted ITP's business at Rapid Central Station.

21.     ITP has never instructed Plaintiffs' representatives to stop leafleting at any bus stop except Rapid Central Station.

22.     On numerous occasions, ITP security staff instructed ATU and Local 836 representatives leafleting at Rapid Central Station to cease and desist leafleting and to leave the premises.

23.     ITP security staff instructed these representatives of Plaintiffs that if they ignored the instructions they would be arrested and banned from Rapid Central Station and that all ITP employees engaged in such leafleting would be disciplined.

24.     ITP security staff gave these instructions and threats at the direction of ITP Chief Operating Officer Brian Pouget.

25.     On August 17, 2015, during a bargaining session between Local 836 and ITP, ITP's attorney stated that any ITP employees who engaged in informational leafleting at Rapid Central Station would be arrested.

26.     Historically, ITP has allowed informational leafleting by the public at Rapid Central Station.

27.     Candidates for public office have distributed campaign literature and conducted voter registration at and around Rapid Central Station.

28.     In 2012 and 2013, Local 836 distributed literature at Rapid Central Station promoting public transit.

29.     In 2014, Local 836 and members of the public distributed leaflets in support of mass transit, conducted voter registration, and distributed literature in support of a Michigan gubernatorial candidate at Rapid Central Station.

30.     In 2015, Local 836 distributed literature at Rapid Central Station in support of Proposal 1, a statewide ballot proposal to increase the state sales tax from 6 percent to 7 percent, which would have increased funding for mass transit.

31.     ITP participated in this campaign in favor of the statewide ballot proposal as well, including by having its representatives distribute literature to members of the public while standing on the island platform at Rapid Central Station.

32.     ITP has never threatened Local 836 members with arrest or discipline for engaging in this type of public leafleting at Rapid Central Station in the past.

**COUNT I**
**42 U.S.C. § 1983**
**Violation of First and Fourteenth Amendment Rights**

33.     As an open air bus stop on public property held open to the general public, the outdoor areas of Rapid Central Station are a traditional public forum.

34.     In the alternative, by the acts set forth above, including by allowing Plaintiffs' representatives, political candidates, ITP representatives, and other members of the public to

engage in public leafleting and solicitation in the outdoor areas at Rapid Central Station, ITP has designated these areas as a public forum.

35.     Finally, even if these areas are not a public forum, ITP is not providing equal access to Rapid Central Station to Plaintiffs as it does to other members of the public.

36.     ITP's prohibition of and threats of discipline in response to Plaintiffs' speech at Rapid Central Station do not constitute reasonable viewpoint-neutral restrictions on the time, place, and manner of Plaintiffs' speech.

37.     ITP's prohibition of and threats of discipline in response to Plaintiffs' speech at Rapid Central Station are not narrowly tailored to the pursuit of a compelling state interest.

38.     ITP is instead engaging in an unreasonable content- and viewpoint-based restriction on Plaintiffs' speech because it relates to ITP's positions in the parties' ongoing collective bargaining, in violation of Plaintiffs' rights under the First Amendment as it is incorporated by the Fourteenth Amendment to apply to the State of Michigan and its instrumentalities.

39.     ITP has explicitly imposed this prohibition as a matter of policy through its agents, including but not limited to its security staff, Chief Operating Officer, and its counsel.

40.     ITP has done so under color of state law as it is a public transit authority imposing restrictions on public property and it has threatened arrest in response to Plaintiffs' speech as set forth above.

WHEREFORE, Plaintiffs respectfully pray that the Court:

A.  Enter judgment in favor of Plaintiffs and against Defendant;

B.  Declare that Plaintiffs may distribute informational literature related to their ongoing negotiations with Defendant to members of the public in the outside areas of Rapid Central Station;

C.  Preliminarily and permanently enjoin Defendant from prohibiting Plaintiffs and their members and representatives from distributing such materials and from disciplining Local 836 members for distributing such materials in the outside areas of Rapid Central Station; and

D.  Grant Plaintiffs' attorneys their fees and costs.

Dated: August 24, 2015                                    By:   s/ Sean Morales-Doyle
                                                                One of Plaintiffs' Attorneys

Thomas H. Geoghegan
Sean Morales-Doyle
Despres, Schwartz & Geoghegan, Ltd.
77 West Washington Street, Suite 711
Chicago, Illinois 60602
(312) 372-2511