UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMALGAMATED TRANSIT UNION
and AMALGAMATED TRANSIT
UNION, LOCAL 836,

   Case No. 1:15-cv-855

  Plaintiffs,

   HON. JANET T. NEFF

v

INTERURBAN TRANSIT
PARTNERSHIP d/b/a THE RAPID, *et al.*,

  Defendants.
_____/

## OPINION

  Pending before the Court is Plaintiffs' Second Motion for a Preliminary Injunction (Dkt 26), to which Defendants filed a response in opposition (Dkt 38). The Court held a motion hearing on November 25, 2015, at which time counsel presented their oral arguments and defense counsel presented the testimony of a witness. This Opinion contains the Court's findings of fact and conclusions of law in accordance with FED. R. CIV. P. 65(d). For the following reasons, the Court determines, in its discretion, that the overall weighing and balancing of the equities warrant the issuance of a second Preliminary Injunction during the pendency of this case, or until further Order of the Court.

### I. FINDINGS OF FACT

1. It is not in dispute that Defendant Interurban Transit Partnership (ITP) d/b/a The Rapid ("The Rapid") is a public authority or "political subdivision" of the State.

2. Plaintiff Amalgamated Transit Union (ATU) is an international union representing transit and allied workers, and Plaintiff ATU Local 836 is a local union that serves as the exclusive representative of all non-supervisory employees of ITP, i.e., the bus drivers and other hourly employees.

3. Since December 2014, Local 836 and The Rapid have been bargaining over the terms of a new collective bargaining agreement (CBA), to succeed the old CBA which expired, after a two-month extension, on August 31, 2015.

4. The parties have been operating without a CBA in place.

5. Plaintiffs brought this suit on August 24, 2015 with the filing of a single § 1983 claim, alleging violations of their rights to freedom of speech and freedom of association under the First Amendment of the United States Constitution (Dkt 1).

6. In August 2015, the Court entered a Temporary Restraining Order (Dkt 5) and the first Preliminary Injunction in this case, enjoining Defendant "from [1] prohibiting or interfering with the distribution of the informational leaflets like the leaflet attached as Exhibit A to the supporting Memorandum of Law in the outside area around The Rapid Central Station, and from [2] imposing discipline on persons for handing out or distributing such informational leaflets to the public" (Dkt 12).

7. On August 31, 2015, Defendants appealed the Preliminary Injunction order to the Sixth Circuit, Case No. No. 15-2038 (Notice of Appeal, Dkt 15). Further, Defendants sought a stay of the injunction from both this Court and the Sixth Circuit. This Court denied the stay (Order, Dkt 17), but Defendants' September 8, 2015 "Emergency Motion for Immediate Consideration and

Motion to Stay Pending Appeal the District Court's Preliminary Injunction" remains pending before the Sixth Circuit.

8. Local 836, with assistance from the international union, has since engaged in a number of forms of public speech about the ongoing labor dispute. The parties agreed at the Motion Hearing that the facts of these incidents were not in dispute, at least for purposes of the instant motion.

9. Specifically, on August 26, 2015, ATU members, including RiChard Jackson, President of Local 836, attended a public meeting of The Rapid's Board of Directors and spoke during the public comments section of the meeting.

10. On September 10, 2015, approximately ten ATU members, including international Vice President Paul Bowen, met in the public street outside the residence of The Rapid's Board Chair, Barbara Holt, in the suburbs of Grand Rapids for about thirty minutes.

    a. At all times, the members remained in the public street.

    b. Members held signs containing various messages, including "We Are One ATU," "Back Off Our Pension," and "Help Us Out Barb!"

11. The ATU staged similar demonstrations at other locations. For example, on another date in September, Mr. Bowen attended a similar, though smaller, demonstration outside the workplace of Jack Hoffman, another member of The Rapid's Board of Directors.

12. That same day, Terry Simmons, one of Plaintiffs' members who participated in the demonstration outside Holt's home, was called into a disciplinary hearing related to a different matter by ITP.

    a. At the meeting, an ITP representative put a copy of MICH. COMP. LAWS § 423.9f on the table and asked Simmons what he was doing that morning.

b. Section 423.9f provides: "It shall be unlawful (1) for any person or persons to hinder or prevent by mass picketing, unlawful threats or force the pursuit of any lawful work or employment, (2) to obstruct or interfere with entrance to or egress from any place of employment, (3) to obstruct or interfere with free and uninterrupted use of public roads, streets, highways, railways, airports, or other ways of travel or conveyance, or (4) to engage in picketing a private residence by any means or methods whatever: Provided, That picketing, to the extent that the same is authorized under constitutional provisions, shall in no manner be prohibited. Violation of this section shall be a misdemeanor and punishable as such."

13. Plaintiffs' motion at bar relies on two pieces of correspondence, both dated September 23, 2015. The first (Plaintiffs' Exhibit D [Dkt 27-5]) is a September 23, 2015 letter from The Rapid's Chief Operations Officer (COO), Brian Pouget, to Mr. Jackson, indicating

    a. ITP "is investigating an alleged unlawful act committed by your union and several of its members against The Rapid's Board Chair, it has not made any decision with regard to how to proceed in response to those actions;" and

    b. ITP was scheduling meetings with Plaintiffs' members that "may result in their being disciplined (up to and including termination)."

14. The second (Plaintiffs' Exhibit E [Dkt 27-6]) is a September 23, 2015 letter from ITP's attorney, Grant Pecor, to ATU international VP Richard Murphy and attorney Joseph Burns,

    a. concerning "attempt[s] to contact Board Members" and "circumvent" him as ITP's "chosen" and "exclusive" bargaining representative;

b.      making "an official demand that you [ATU] immediately cease and desist from any effort to contact members of the ITP's Board or any other employee of the ITP regarding any issue related to our negotiations," including "efforts to persuade individuals at public meetings, their homes or places of employment."

c.      and concluding,"[s]hould you continue any such efforts, I will have no choice but to pursue an appropriate legal remedy."

15.      On October 16, 2015, Plaintiffs amended their complaint, naming ITP's CEO, COO and its board members in their individual capacities and adding two more § 1983 counts related to (1) September 2015 "direct action protests" in public streets in front of residences and businesses and (2) comments at public meetings of the ITP Board of Directors (with corresponding new facts) (Dkt 24). The current three § 1983 claims are as follows:

     I.      Violation of First and Fourteenth Amendment Rights at Rapid Central Station
     II.      Violation of First and Fourteenth Amendment Rights in City Streets
     III.      Violation of First and Fourteenth Amendment Rights at Public Meetings

16.      Plaintiffs now seek a second Preliminary Injunction relevant to the new Counts II and III (Dkt 26). Plaintiffs seek an injunction enjoining Defendants from both (1) prohibiting or interfering with, and (2) imposing discipline on persons for their activities on the "City Streets" and at "Public Meetings."

## II. CONCLUSIONS OF LAW

### A. Jurisdiction

1.      "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case

involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam).

2. A district court retains jurisdiction to "adjudicate matters unrelated to the issues on appeal." *Weaver v. Univ. of Cincinnati*, 970 F.2d 1523, 1528-29 (6th Cir. 1992) (holding that an appeal from an interlocutory order does not divest the trial court of jurisdiction to continue deciding other issues involved in the case). *See, e.g., Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 626 (6th Cir. 2013) (holding that the preliminary injunction was one of the "other issues" over which the trial court retains jurisdiction).

3. As indicated in the parties' briefing on appeal to the Sixth Circuit, the parties do not challenge the legal framework this Court applied in deciding to enter the first preliminary injunction, only the Court's application of the legal framework to the facts relevant to Count I.

4. The proposed second Preliminary Injunction concerns the facts set forth in Counts II and III and is therefore, in the Court's opinion, not an aspect of the case "involved in the appeal" from Count I.

5. Defendants' interlocutory appeal from injunctive relief on Count I (Rapid Central Station) does not divest this Court of jurisdiction to decide whether injunctive relief is appropriately granted on Count II (City Streets) and Count III (ITP Public Meetings).

**B. Motion Standard**

6. Again, the parties do not disagree on the legal framework:

   a. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981). A party "is not required to prove his case in full at a preliminary

injunction hearing, and the findings of fact and conclusions of law made by a court granting the preliminary injunction are not binding at trial on the merits." *Id.*

b. In evaluating a request for a preliminary injunction under Federal Rule of Civil Procedure 65, a district court should consider: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without a preliminary injunction; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (citing *American Imaging Servs., Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.)*, 963 F.2d 855, 858 (6th Cir. 1992)).

c. The party seeking the preliminary injunction bears the burden of justifying such relief, including showing irreparable harm and likelihood of success. *McNeilly*, 684 F.3d at 615 (citing *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 441 (1974)).

d. The likelihood-of-success-on-the-merits consideration is the determinative factor in assessing the potential violation of the First Amendment, as alleged in this case. *See Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

　　i. With regard to the factor of irreparable injury, for example, "it is well-settled that 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Id.* (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)).

　　ii. Similarly, "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

### C. Count II (Public Streets)

7. The First Amendment provides that Congress cannot pass a law "abridging the freedom of speech" of citizens of the United States. U.S. CONST. amend. I.

8. The Supreme Court has adopted a forum analysis as a means of determining when the government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985).

9. The parties do not disagree that the speech at issue in Count II has taken place in what is unquestionably a public forum: public streets. *See United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 350 (6th Cir. 1998) (stating, albeit in dicta, that "streets" are an "archetypical example" of a traditional public forum).

10. Defendants appear not to have questioned Plaintiffs' right to picket or otherwise engage in protests in city streets or in front of businesses (Resp., Dkt 38 at 2, 6). Primarily at issue in Count II is the September 10, 2015 activity outside Holt's private residence.

11. Defendants argue that Plaintiffs' First Amendment claim in Count II will fail because this activity constitutes a misdemeanor under Michigan's law, to wit: § 423.9f(4), providing that "[i]t shall be unlawful ... to engage in picketing a private residence by any means or methods whatever."

12. Having carefully examined the state statute and given consideration to the parties' written and oral arguments, the Court determines that the law is not yet established on the applicability and/or proper construction of the state statute. The Court determines that Plaintiffs have raised questions going to the merits that are "so serious, substantial, difficult, and doubtful as to make

them a fair ground for litigation and thus for more deliberate investigation," satisfying Plaintiffs' burden at this stage in the proceedings. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (quoting *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997)).

13. Defendants argue that Plaintiffs are also not likely to succeed on the merits of Count II because the claims are not ripe and/or rest upon contingent future events that may not occur as anticipated, or may not occur at all. In this regard, Defendants emphasize that The Rapid has not enforced the state statute—indeed, has no authority to enforce it—and has not threatened adverse consequences for violating the statute.

14. However, Mr. Pouget's testimony at the Motion Hearing last month served to support the credibility of the threat implied in The Rapid's disciplinary activities, activities that chill the exercise of First Amendment free speech rights. Specifically, Mr. Pouget conceded that "the possibility exists" that he would discipline—and even terminate—an employee solely for standing outside a board member's home with a sign. As Plaintiffs' counsel pointed out, in such circumstances, the ripeness requirements are relaxed. *See Carey v. Wolnitzek*, 614 F.3d 189, 196 (6th Cir. 2010) (explaining that "[i]n the context of a free-speech ... challenge like this one, a relaxed ripeness applies to steer clear of the risk that the law 'may cause others not before the court to refrain from constitutionally protected speech or expression'") (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)). For purposes of this motion, it is the Court's preliminary assessment that the harm alleged satisfies the relaxed ripeness requirements.

15. Defendants also argue that Plaintiffs' Count II will fail on its merits because (1) The Rapid is an "arm of the state" protected by sovereign immunity and not a "person" under 42 U.S.C. §

1983; and (2) Plaintiffs have failed to state a claim against The Rapid's individual board members.

16. However, the Court determines that these aspects of Plaintiffs' Count II also present fair grounds for litigation and more deliberate investigation, including briefing on Defendants' arguments, which this Court has scheduled (12/10/15 Order [Briefing Schedule], Dkt 46).

17. Last, although the balancing of the preliminary-injunction factors is skewed toward an emphasis on the first factor in the context of a First Amendment claim, the Court is also persuaded by, and gives great weight to, Plaintiffs' unique showing of irreparable injury on the facts of this case. Specifically, the Court determines that the alleged loss of Plaintiffs' First Amendment freedoms to educate the public and influence the public entity during these critical months of negotiation may become a permanent loss once an agreement is negotiated. The Court is therefore disinclined to suspend Plaintiffs' free speech rights while the issues arising from the allegations in Count II are being briefed and resolved.

18. Therefore, the Court, in its discretion, determines that the overall balance of the factors weighs in favor of entry of a Preliminary Injunction applicable to Count II.

### D. Count III (Public Meetings)

19. Here, too, the parties do not disagree that the speech at issue in Count III has taken place in what is unquestionably a public forum: public meetings. *See Featherstone v. Columbus City Sch. Dist. Bd. of Educ.*, 92 F. App'x 279, 282 (6th Cir. 2004) (holding that "[a] school board meeting, when opened to the public, is a limited public forum for discussion of subjects relating to the operation of the schools").

20. While defense counsel asserted, and Mr. Pouget corroborated the assertion, that "rank and file members" are not prohibited from speaking at public meetings, including meetings of The Rapid's Board, attorney Pecor's letter made "an official demand that you [ATU] immediately cease and desist from any effort to contact members of the ITP's Board or any other employee of the ITP regarding any issue related to our negotiations," including "*efforts to persuade individuals at public meetings...*" and concluded,"[s]hould you continue any such efforts, I will have no choice but to pursue an appropriate legal remedy" (emphasis added).

21. The Court therefore does not determine that Plaintiffs' request for preliminary injunctive relief in Count III is moot.

22. Further, for purposes of this motion, it is the Court's preliminary assessment that the credible threat of harm satisfies the relaxed ripeness requirements in this First Amendment claim, too.

23. The Court determines that Plaintiffs' allegations in Count III present fair grounds for litigation and more deliberate investigation, including briefing on Defendants' twin "arm-of-the-state" arguments and their failure-to-state-a-claim argument.

24. Last, as with Plaintiffs' right to exercise their freedom of speech in the public streets, the Court is equally disinclined to suspend Plaintiffs' right to exercise their freedom of speech at public meetings while the issues arising from the allegations in Count III are being briefed and resolved.

25. Therefore, the Court, in its discretion, determines that the overall balance of the preliminary-injunction factors also weighs in favor of entry of a Preliminary Injunction applicable to Count III.

Accordingly:

A Preliminary Injunction corresponding with this Opinion will enter.


Date: December 10, 2015        /s/ Janet T. Neff
                               JANET T. NEFF
                               United States District Judge